UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:                                              Chapter 7

      Jeffrey Greenberg                        Case No. 13-44533 (CEC)

               Debtor.

DECISION

APPEARANCES:

Jeffrey Greenberg                          Richard A. Altman, Esq.
9511 Shore Road #301                       Law Office of Richard A. Altman
Brooklyn, New York 11209                   285 West Fourth Street
*Pro-se Debtor*                            New York, New York 10014
                                           *Counsel for Anthony Germano*

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of the debtor, Jeffrey Greenberg (the "Debtor"), to reopen his bankruptcy case to enforce his discharge and to hold creditor Anthony Germano ("Germano") and his counsel, Richard A. Altman, Esq. ("Altman"), in contempt for violating the discharge injunction.  Because Germano had notice of this case in time to file an adversary proceeding to determine the dischargeability of his claim, § 523(a)(3)(B) of the Bankruptcy Code is inapplicable.  It follows that Germano's claim was discharged under § 727 of the Bankruptcy Code and, therefore, the Debtor's motion is granted.

## JURISDICTION

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (O), 28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The following facts are not in dispute, except as otherwise indicated.

The Debtor filed this case on July 24, 2013.[1]  (Chapter 7 Voluntary Petition, 13-44533-CEC, ECF No. 1.)  The Debtor's schedules included a contingent, liquidated, and disputed unsecured claim by Germano valued at an unknown amount.  (Schedule F, 13-44533-CEC, ECF No. 1.)  Germano's claim is based on a state court action for fraud, breach of contract, breach of warranty, and unjust enrichment which was commenced in 2009 (the "State Court Action").  (Mot. to Reopen Chapter 7 Case to Enforce Discharge and Discharge Injunction, Ex. A, 13-44533-CEC, ECF No. 18 at 12-23.)  On the Debtor's schedule F, Germano's address was listed

---

[1] The Debtor was represented by counsel when this case was filed, but made this motion pro se.

as "Anthony Germano c/o John Gordon Nicol Esq, Seaman & wainwright [sic] LLP, 771 Third

Avenue, Ste 1505, New york, NY [sic] 10017."  (Schedule F, 13-44533-CEC, ECF No. 1.)

On September 3, 2013, the Debtor visited his counsel's office and notified his counsel

that Mr. Nicol was no longer Germano's counsel and that Altman now represented Germano.

(Affirmation, 13-44533-CEC, ECF No. 21 at ¶ 3.)  On September 24, 2013, an amended

schedule F was filed in this case (the "Amended Schedule F").  (Amended Schedule F, 13-

44533-CEC, ECF No. 13.)  The Amended Schedule F added the following names and addresses:

Anthony Germano
120 York Road
Thorofare, NJ 08086

Law Office of Richard Altman
285 W Fourth Street
New York, NY 10014

Seaman & Wainwright LLP
160 E 38th Street
Ste 12B
New York, NY 10016

Id.  The Debtor's counsel filed an affidavit of service on September 24, 2013 which stated that

an amended schedule B was served on the above parties on the same day.  (Aff./Certificate of

Service, 13-44533-CEC, ECF No. 14.)[2]  On September 6, 2013, the chapter 7 trustee filed a no

asset report in this case. The Debtor received his discharge on November 6, 2013 and notice of

the Debtor's discharge was sent by the Bankruptcy Noticing Center to the above addresses on

November 8, 2013.  (Order Discharging Debtor and Final Decree, 13-44533-CEC, ECF No. 16;

BNC Certificate of Mailing with Chapter 7 Discharge and Chapter 7 Final Decree, 13-44533-

CEC, ECF No. 17.)

---

[2] As discussed infra p. 7, the Debtor's counsel testified that the Amended Schedule F, not schedule B, was served on
September 24, 2013, and that the reference in the affidavit to schedule B was a typographical error.

Germano and Altman admit that they each received a copy of the order granting the Debtor a discharge. (Decl. in Opp'n, 13-44533-CEC, ECF No. 20 at ¶ 4 of Germano Affidavit and ¶¶ 1, 6 of Altman Affidavit.)  Both assert that this was the first notice of the bankruptcy filing they received.  Id.  Altman states that, after receiving notice of the discharge, he "reviewed the docket, the petition and applicable law, and determined that the lack of any timely notice or knowledge of the second petition did not bar me from continuing to litigate the debt in the New York Court County Supreme Court."  Id. at ¶ 10.  Altman proceeded to file a motion for summary judgment in the State Court Action. (Mot. to Reopen Chapter 7 Case to Enforce Discharge and Discharge Inj., Ex. D, 13-44533-CEC, ECF No. 18 at 36-42.)  Upon receiving the summary judgment motion, the Debtor's counsel contacted Altman and informed him that the continuing prosecution of the state court action violated the automatic stay and demanded that Altman withdraw the motion.  (Decl. in Opp'n, 13-44533-CEC, ECF No. 20 at ¶ 11 of Altman Affidavit.)  Altman refused to do so.  Id.

On March 12, 2014, the Debtor filed a pro se motion to re-open his bankruptcy case to enforce the discharge injunction and hold Germano and Altman in contempt.  (Mot. to Reopen Chapter 7 Case to Enforce Discharge and Discharge Injunction, 13-44533-CEC, ECF No. 18.) On April 15, 2014, Altman filed a Declaration in Opposition to the Motion (the "Opposition"). Following an evidentiary hearing on July 1, 2014, at which the Debtor and his counsel testified, Altman submitted a memorandum of law (the "Memorandum") and the Debtor submitted a response to the Memorandum (the "Response").  (Mem. of Law, 13-44533-CEC, ECF No. 29; Debtor's Resp. to the Creditor Anthony Germano's Mem. of Law, 13-44533-CEC, ECF No. 30.)

<u>DISCUSSION</u>

The Debtor received his discharge on November 6, 2013.  Section 727 of the Bankruptcy Code defines the extent of the Debtor's discharge: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . .."  11 U.S.C. § 727(b).  Section 523 of the Bankruptcy Code, which governs exceptions to discharge, provides that,

> "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> (3) neither listed nor scheduled under section 521 (a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request."

11 U.S.C. § 523(a)(3).  Because one of the asserted bases of Germano's claim is fraud (in addition to breach of contract, breach of warranty, and unjust enrichment), Germano's claim could potentially constitute a debt of the kind specified under § 523(a)(2) of the Bankruptcy Code (for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition), making § 523(a)(3)(B) of the Bankruptcy Code applicable.  To the extent that Germano's claim falls within the ambit of § 523(a)(2), the claim was not discharged if Germano did not have notice or actual knowledge of

this bankruptcy case in time for him to file a timely request for a determination of dischargeability of the debt.[3]

**A.  Germano and Altman had Notice of The Case**

The parties dispute whether Germano, or Altman on behalf of Germano, had notice of the Debtor's bankruptcy.  The Debtor claims that service of the Amended Schedule F on Germano and Altman put Germano on notice of the bankruptcy case.  Germano and Altman assert that they had no notice or actual knowledge of the Debtor's bankruptcy case until they received notice of the Debtor's discharge.

A debtor is not required to provide actual notice to every creditor; rather, a debtor is only required to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to [respond]." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950), ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.").  Reasonable notice—even to a known creditor—does not require actual receipt of notice by the creditor.  Weigner v. City of New York, 852 F.2d 646, 651 (2d Cir.1988) ("The Supreme Court has repeatedly held that notice by first-class mail is sufficient, notwithstanding the Court's obvious awareness that not every first-class letter is received by the addressee.").

Service of notice upon an attorney that represents a creditor may constitute notice to that creditor.  In re Herman, 737 F.3d 449, 454 (7th Cir. 2013).  For notice to a claimant's attorney in lieu of the claimant to be reasonable, there must be "a sufficient nexus between the creditor's retention of an attorney and the creditor's claim against the debtor."  Id. (quoting In re Najjar, No. 06–10895(AJG), 2007 WL 1395399, at *4 (Bankr. S.D.N.Y. May 11, 2007)).  A sufficient

[3] Because this was a no-asset case, no proofs of claim were required to be filed.  See Fed. R. Bankr. P. 2002(e).

nexus exists when the attorney is representing the creditor in an action to collect the debt sought to be discharged.  In re Elias, No. 13–cv–01269 (CBA), 2014 WL 1248042, at *5 (E.D.N.Y. March 24, 2014);  In re Linzer, 264 B.R. 243, 249 (Bankr.E.D.N.Y.2001) ("[W]hen a non-bankruptcy counsel is actively engaged in prosecuting a creditor's claim against the debtor before a non-bankruptcy tribunal ... that is a sufficient nexus to the bankruptcy case to justify imputing authorized agency.").

   It is well settled that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."  Hagner v. United States, 285 U.S. 427, 430, 52 S. Ct. 417, 419, 76 L. Ed. 861 (1932) (citing Rosenthal v. Walker, 111 U.S. 185, 193, 4 S. Ct. 382, 386, 28 L. Ed. 395 (1884)).  To invoke the presumption, a party must prove that the letter was properly addressed, stamped, and mailed. Hagner, 285 U.S. at 430; In re Bernard L. Madoff Inv. Sec. LLC, No. 13 CIV. 4332 ALC, 2014 WL 1302660, at *4 (S.D.N.Y. Mar. 31, 2014);  In re Residential Capital, LLC, No. 12-12020 (MG), 2014 WL 3798622, at *10 (Bankr. S.D.N.Y. July 31, 2014); In re AMR Corp., 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013); In re Barquet Group., Inc., 477 B.R. 454, 462 n. 7 (Bankr. S.D.N.Y.) aff'd, 486 B.R. 68 (S.D.N.Y. 2012); In re Dana Corp., No. 06-10354BRL, 2007 WL 1577763, at *4 (Bankr. S.D.N.Y. May 30, 2007); In re Robinson, 228 B.R. 75, 81 (Bankr. E.D.N.Y. 1998); Cablevision Sys. Corp. v. Malandra (In re Malandra), 206 B.R. 667, 672- 73 (Bankr. E.D.N.Y. 1997).  "Courts have routinely held that 'an affidavit of service is sufficient evidentiary material to raise the presumption [of receipt after proper mailing].'"  In re Bernard L. Madoff Inv. Sec. LLC, 2014 WL 1302660, at *4 (brackets in original) (quoting In re O.W. Hubbell & Sons, Inc., 180 B.R. 31, 34 (N.D.N.Y. 1995)).  "This presumption of receipt is 'very strong' and 'can only be rebutted by specific facts and not by

invoking another presumption and not by a mere affidavit to the contrary.... Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary.'" In re Barquet Group., Inc., 477 B.R. at 462 n. 7 (ellipses in original) (quoting In re FairPoint Commc'ns, Inc., 462 B.R. 75, 81 n.7 (Bankr. S.D.N.Y. 2012). Accord, Gilbert v. N. Am. Airlines, No. 12-CV-523 KAM JMA, 2014 WL 1271057, at *8 (E.D.N.Y. Mar. 26, 2014) ("While it is possible to rebut the presumption of receipt, a party must allege more than 'mere denials' of receipt of notice, and allege insufficient notice 'in combination with evidence of standardized procedures for processing mail.'" (quoting In re Robinson, 228 B.R. at 82).

        Here, the presumption of receipt applies.  The Debtor's counsel, Robert Nadel, filed an affirmation of service dated September 24, 2013, stating that on that date he "forwarded the within amended schedule B with attached 1009 affidavit by first class mail upon the persons listed in the attached mailing list."  (Aff./Certificate of Service, 13-44533-CEC, ECF No. 14). At the July 1, 2014 hearing, Mr. Nadel testified that the reference in the affidavit to schedule B was a typographical error; that schedule F was the only schedule amended in this case, and that he personally filed the Amended Schedule F listing Germano and Altman and mailed it to them. (Hr'g Tr. 8:9-10, 9:10-18, July 1, 2014, 13-44533-CEC, ECF No. 31).  The addresses shown on the contemporaneous affidavit of service, to which the Amended Schedule F was mailed, are correct with respect to Germano and Altman.  The Debtor's counsel testified that he did not receive any returned mail.  (Hr'g Tr. 16:16-18, July 1, 2014, 13-44533-CEC, ECF No. 31.)

        Germano and Altman have failed to overcome the presumption of receipt.  Though each submitted a declaration denying receipt of the Amended Schedule F, these denials of receipt are insufficient to rebut the presumption.  (Resp. and Decls. in Opp'n, 13-44533-CEC, ECF No. 20); In re AMR Corp., 492 B.R. at 664-65 (finding denial of receipt without evidence of a

"formal tracking system" for incoming mail insufficient to rebut presumption); In re Residential Capital, LLC, 2014 WL 3798622, at *10 (finding that "bald denial of receipt, without more, is legally insufficient to overcome the presumption of receipt"); In re O.W. Hubbell & Sons, Inc., 180 B.R. at 35 (finding that the bankruptcy court "gave the proper weight, i.e. none" to affidavit denying receipt of notice); In re Malandra, 206 B.R. at 673 (holding that addressee's allegation of non-receipt is insufficient to rebut the presumption). Altman also filed a declaration in which he states that he attempted to mail letters to Mr. Seaman, at the address listed in the Amended Schedule F, which was returned as undeliverable. (Decl. in Further Opp'n, 13-44533-CEC, ECF No. 22.) Notice to Seaman & Wainwright LLP is not relevant, because even if the firm did not receive notice, it would not rebut the presumption of receipt as to Germano and Altman. Because Germano and Altman have failed to demonstrate that there was any defect in the addresses used for the mailing or the mailing process itself, and because they have failed to provide any evidence of non-receipt other than conclusory, unsupported denials, they have failed to overcome the presumption of receipt.

Altman argues the presumption of receipt is "slight", and that once there is evidence of non-receipt, the presumption disappears, and the issue becomes one of fact. (Mem. of Law, 13-44533-CEC, ECF No. 29 at 3.) The Second Circuit cases Altman cited for this proposition are inapplicable, as they address the presumption of receipt with respect to Notices to Appear in immigrant removal proceedings pursuant to 8 U.S.C. § 1229. Caguana v. Holder, 336 F. App'x 1 (2d Cir. 2009); Silva-Carvalho Lopes v. Mukasey, 517 F.3d 156, 157 (2d Cir. 2008). In Lopes, the Second Circuit adopted the Ninth Circuit's approach applying a weaker presumption of receipt in this context. "[W]here a petitioner had appeared at earlier immigration proceedings, had no motive to avoid the immigration proceedings, and in fact had initiated proceedings to

obtain an immigration benefit, a statement or affidavit by the petitioner stating that he or she had not received notice should ordinarily suffice to overcome the presumption of receipt." Lopes, 517 F.3d at 159-60.

The Second Circuit has not applied the weakened presumption of receipt adopted in Lopes outside the context of applications seeking to reopen immigration proceedings to vacate a removal order entered in absentia.  Indeed, in the year after Lopes was decided, the Second Circuit applied a full presumption of receipt to a notice mailed by an employer to an employee containing a packet of information concerning a newly adopted mandatory arbitration program, including an election form explaining how the employee could opt out.  Manigault v. Macy's E., LLC, 318 F. App'x 6 (2d Cir. 2009).  The Court found that affidavits by the employer's personnel stating that the employee was mailed the documents at the address specified in the employer's personnel database, and that the employer's records showed that the mailing was not returned as undeliverable, invoked a presumption that the mailing was received, and that the employee's denial of receipt, as well as similar denials by two other employees, was insufficient to rebut the presumption.  Id. at 7; accord Feroce v. Bloomingdale's Inc., No. 12-CV-5014 SJF GRB, 2014 WL 294199, at *5 (E.D.N.Y. Jan. 24, 2014) (holding that denial of receipt of arbitration opt-out form was insufficient to rebut the presumption invoked by evidence of mailing); Stein v. Am. Gen. Life Ins. Co., No. 11-CV-6009 DLI JO, 2014 WL 3643847 (E.D.N.Y. July 22, 2014) (holding that evidence of insurer's office procedures was sufficient to invoke a presumption that required notice under life insurance policy had been received, which presumption was not rebutted by plaintiff's denial of receipt).[4]

---

[4] In Alvarez v. Coca-Cola Refreshments, USA, Inc., 914 F. Supp. 2d 256 (E.D.N.Y. 2012), another case involving an employee arbitration program, the court noted that Manigault, an unpublished summary order, is not binding, and declined to apply it, pointing out that ". . . providing notice is different from forming a contract," and declining to conclude that the employee's "decision to continue his employment . . . amounted to a clear and explicit

The weaker presumption of receipt adopted in <u>Lopes</u> has not been applied in a single bankruptcy case, and for good reason.  Applying a weaker presumption of receipt to notices sent by mail in bankruptcy cases would be at odds with the fundamental purpose of bankruptcy deadlines and bar dates.  As one court has noted, "[i]f a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled."  <u>Trump Taj Mahal Assocs. v. Alibraham</u>, 156 B.R. 928, 939 (Bankr. D.N.J. 1993).  The scheme of deadlines and bar dates established by the Bankruptcy Code and Bankruptcy Rules is essential to the proper administration of bankruptcy cases.

> The bar date does not function merely as a procedural gauntlet, but as an integral component of the court's equitable power to restructure debtor-creditor relationships.  Adherence to the bar date furthers the policy of promptly reconciling claims against the estate, because it allows parties in interest to determine the identity of those making claims against the estate and the general amount of the claims.

<u>In re R.H. Macy & Co., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993)</u> (citations and internal quotations omitted).  The deadline set for a challenge to a debtor's discharge, or to the dischargeability of particular debts, is equally important in the bankruptcy scheme.  Bankruptcy Rule 4007(c) "evince[s] a strong intent that the participants in bankruptcy proceedings be assured that, within the set period of 60 days, they can know which debts are subject to an exception to discharge.  This fixed, relatively short limitation period enables the debtor and creditors to make better-informed decisions early in the proceedings."  <u>Neeley v. Murchison</u>, 815 F.2d 345, 346-347 (5th Cir. 1987).

---

manifestation of assent to [the employer's] proffered arbitration agreement."  <u>Id.</u> at 258-59.  Here, by contrast, the issue is whether Germano had notice of the bankruptcy; actual knowledge (presumably necessary for a "clear and explicit manifestation of assent to arbitration") is not required in order for Germano's claim to be discharged.

To apply a weaker presumption of receipt to notices sent by mail in bankruptcy cases would, moreover, be at odds with the Bankruptcy Rules, which prescribe service of notices by mail, and define mail as "first class, postage prepaid." Fed. R. Bankr. P. 2002; 9001(8).  It would mean that, where a bar order or other notice is served in accordance with the Bankruptcy Rules, any party could potentially avoid the effect of failure to meet the deadline by claiming non-receipt.  This would defeat, or at least substantially undermine, the purpose of the noticing scheme established under the Bankruptcy Code and Bankruptcy Rules.

Germano also relies upon Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 319 (3d Cir. 2014) to support his argument that a "slight" or "weaker" presumption arises in this case. In Lupyan, the Third Circuit held that a "strong presumption" of receipt applies when notice is sent by certified mail, because it creates evidence in the form of a receipt.  Id.  The court went on to hold that a "weaker presumption" arises where notice is sent via regular mail.  Id.  The Lupyan court held that "'the presumption's only effect is to require the party [contesting it] to produce enough evidence substantiating [the presumed fact's absence] to withstand a motion for summary judgment or judgment as a matter of law on the issue.'"  Lupyan, 761 F.3d at 320 (alteration in original) (quoting McCann v. George W. Newman Irrevocable Trust, 458 F.3d 281, 288 (3d Cir. 2006)).  To defeat summary judgment, a party contesting the presumption may submit "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue," even if the affidavit is self-serving.  Lupyan, 761 F.3d at 320-21.

Federal courts in New York, at least outside the context of immigrant removal proceedings, do not follow this approach where a presumption of receipt has been invoked, but rather have held "quite uniformly that an affidavit of non-receipt is insufficient to rebut the presumption of receipt." In re Malandra, 206 B.R. at 673 (holding that an affidavits by creditor's

counsel, indicating that counsel did not receive notice of the debtor's case, were insufficient to rebut the presumption of receipt); accord, Gilbert, 2014 WL 1271057, at *8 (citing Malandra) (holding that plaintiff's assertion that he did not understand the notice and that his counsel had no recollection of any notice, failed to rebut the presumption of receipt); In re Madoff, 2014 WL 1302660, at *4 (holding that the presumption of receipt cannot be rebutted simply by the intended recipient's denial of receipt); In re Residential Capital, 2014 WL 3798622, at *10 (finding that "bald denial of receipt, without more, is legally insufficient to overcome the presumption of receipt"); In re AMR Corp., 492 B.R. at 663-64 (finding denial of receipt without evidence of a "formal tracking system" for incoming mail insufficient to rebut presumption); In re Yashaya, 403 B.R. 278, 283 (Bankr. E.D.N.Y. 2009) aff'd sub nom. Yesh Diamonds, Inc. v. Yashaya, No. 09-CV-2016 DLI RER, 2010 WL 3851993 (E.D.N.Y. Sept. 27, 2010) (finding that the debtor's statement that he never received the summons and complaint, without more, is insufficient to rebut the presumption of receipt); In re Dana Corp., 2007 WL 1577763, at *4 (finding that specific facts and objective evidence going beyond the claimant's statement of non-receipt is necessary to rebut the presumption of receipt); In re Robinson, 228 B.R. at 82 (finding that mere denial of receipt does not rebut the presumption, but that testimony denying receipt in combination with evidence of standardized procedures for processing mail can be sufficient to rebut the presumption); In re O.W. Hubbell & Sons, Inc., 180 B.R. at 34 (finding that the bankruptcy court "gave the proper weight, i.e. none" to affidavit denying receipt of notice); In re R.H. Macy & Co., 161 B.R. at 360 (finding that self-serving submissions asserting non-receipt were insufficient to rebut the presumption of receipt).

Lupyan involved a dispute concerning whether an employee had received notice of her rights under the Family Medical Leave Act. Lupyan, 761 F.3d 314. In that context, the Third

Circuit concluded that "[i]n this age of computerized communications and handheld devices, it is certainly not expecting too much to require businesses that wish to avoid a material dispute about the receipt of a letter to use some form of mailing that includes verifiable receipt when mailing something as important as a legally mandated notice." Id. at 322.  While this might be true in the case of an individual notice required under the Family Medical Leave Act, to require, in bankruptcy cases, that legally mandated notices be sent in a way that provides verifiable proof of receipt would create a substantial burden not imposed by the Bankruptcy Rules.  Such an approach would, moreover, require significant modification of the procedures followed by the national Bankruptcy Noticing Center ("BNC"), which is responsible for serving notices of many types of deadlines in bankruptcy cases, including, presumably, requiring BNC to track and provide proof of receipt of mailings.  Such a change would transform the rules concerning notice in bankruptcy cases, substituting a standard requiring documentary proof of actual receipt of notice, for the current standard, which is met by the notice procedures prescribed by the Bankruptcy Rules, that interested parties receive "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to [respond]." Mullane, 339 U.S. at 314.

Moreover, while the Lupyan court expressed concern for the plight of the individual, who has no ability to point to an incoming mail log or other business practice to substantiate a denial of receipt, here, Germano and Altman provide no more than conclusory affidavits of non-receipt.  See Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999), as amended on denial of reh'g (Dec. 22, 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").  Germano's affidavit states that he did not receive notice of the bankruptcy case until receipt of

the Debtor's notice of discharge.  (Decl. in Opp'n, 13-44533-CEC, ECF No. 20 at ¶ 4 of

Germano Affidavit.)  Altman's affidavit states the same.  Id. at ¶¶ 1, 6 of Altman Affidavit.

These affidavits provide no facts to support the asserted conclusion that the letters containing the

Amended Schedule F were not delivered to the addresses to which they were mailed.  Facts that

would potentially support their claim that the Amended Schedule F was not delivered (but which

are absent from their affidavits) could include that the affiants possess exclusive control of their

mail; that they were not on vacation or away from their residence or office for any period of time

around the time of the mailing; that they have procedures in place that would limit or eliminate

the possibility of mail being misplaced or overlooked; or that other mail had not been received

around the time period of the Amended Schedule F mailing.  At best, Germano and Altman's

affidavits establish that they never had actual knowledge of the Amended Schedule F, but it does

not establish that notice was never received at their mailing addresses.  See 11 U.S.C. §

523(a)(3)(B) (excepting unscheduled debts from discharge unless the creditor had "notice or

actual knowledge" of the case in time to challenge dischargeablity) (emphasis added).

Germano and Altman also point out that both of them deny receipt of the mailing of the

Amended Schedule F, and argue that this fact substantiates their claim of non-receipt.  (Mem. of

Law, 13-44533-CEC, ECF No. 29 at 1.)  The Second Circuit has held that more substantial proof

than multiple denials of receipt is required to create an issue of fact regarding the presumption of

mailing.  See Meckel v. Cont'l Res. Co., 758 F.2d 811, 817-18 (2d Cir. 1985).  No court has held

that multiple denials of receipt are sufficient to rebut the presumption of receipt.  Some courts

faced with denial of receipt from more than one recipient have found that multiple denials of

receipt, rather that bolstering the credibility of the denials, casts doubt upon the claims of non-

receipt.  In re Robinson, 228 B.R. at 83 ("It is highly unlikely that two properly addressed

notices, one sent to Pennsylvania and the other to North Carolina, were both lost in the mail."); In re Borchert, 143 B.R. 917, 920 (Bankr. D.N.D. 1992) ("It is incredulous to think that four letters sent by two different people were not received by two different intended recipients. An affidavit suggesting non-receipt of a single letter by a single recipient might be worthy of belief but for two separate entities to both claim to have no record of receiving the letters is a rather convenient defense at this late date.").

### B. Notice to Germano and Altman was Timely

Notice to a creditor, under § 523(a)(3)(B), must be in time to permit a creditor to file a timely request for a determination of dischargeability of the creditor's debt. 11 U.S.C. § 523(a)(3)(B). The Bankruptcy Code is silent with respect to the time frame courts should apply under this section. Under Bankruptcy Rule 4007(c), creditors, are afforded at least 30 days' notice to file a complaint under § 523(c) to determine the dischargeability of a debt. Fed. R. Bankr. P. 4007(c). Courts that have addressed the timeliness of notice under § 523(a)(3) have generally applied the 30 day notice period provided under Bankruptcy Rule 4007(c). In re Dewalt, 961 F.2d 848, 850 (9th Cir. 1992) ("[T]he 30-day notice provision of Rule 4007(c) provides a guide to the minimum time within which it is reasonable to expect a creditor to act at penalty of default."); In re Petty, 491 B.R. 554, 560-61(B.A.P. 8th Cir. 2013) (six-days' notice of deadline insufficient); In re Heiney, 194 B.R. 898, 901 (D. Colo. 1996) (18-days' notice insufficient); In re Walker, 149 B.R. 511, 514-15 (Bankr. N.D. Ill. 1992) (20-days' notice insufficient); In re Muse, 289 B.R. 619, 624 (Bankr. W.D. Pa. 2003); but cf., Matter of Sam, 894 F.2d 778, 780-82 (5th Cir. 1990) (holding that 18 days' notice was sufficient time to allow the creditor to file an adversary proceeding or a motion to extend the bar date).

In this case, the Amended Schedule F was served on September 24, 2013, and the deadline for creditors to file an adversary proceeding to determine the dischargeability of their debts was November 6, 2013; a 43 day time period.  Because the notice given to Germano and Altman was greater than the 30 day notice period established by Bankruptcy Rule 4007(c), notice to Germano and Altman was timely for purposes of § 523(a)(3)(B).

<u>CONCLUSION</u>

The "presumption of receipt" arises in this matter and has not been rebutted by Germano. Because Germano had notice of this case in time to file an adversary proceeding to determine the dischargeability of his claim, § 523(a)(3)(B) of the Bankruptcy Code is inapplicable.  It follows, therefore, that Germano's claim was discharged under § 727 of the Bankruptcy Code.  For the foregoing reasons, the Debtor's motion to enforce the discharge injunction is granted and Germano and Altman are directed to discontinue any action against the Debtor with respect to that claim.  A separate order will issue.



**Dated: Brooklyn, New York**
**February 27, 2015**

_____
                    **Carla E. Craig**
**United States Bankruptcy Judge**